IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 1:16-cv-03054-RM-STV

TRANSFIRST, LLC,

    Plaintiff,

v.

DANIEL BROWN,
DAVID GREK,
DAVID Y. REICH,
VETERAN TONER SERVICES, LLC,
BRIAN APPELHANS, and
BA BROKERAGE, LLC,

    Defendants.

---

## ORDER

---

This matter is before the Court on Plaintiff's motion for default judgment (ECF No. 215), Defendants BA Brokerage, LLC ("BA") and Appelhans' motion for partial judgment on the pleadings (ECF No. 223), Defendant Reich's motion for partial judgment on the pleadings and for summary judgment as to all claims against him (ECF No. 224), and Plaintiff's motion to strike (ECF No. 256). For the reasons given below, these motions are denied.

## I. BACKGROUND

Plaintiff is a Delaware limited liability company with its principal place of business in Broomfield, Colorado. (ECF No. 102 at ¶ 1.) Plaintiff processes and settles transactions on behalf of merchants who accept credit and debit cards for payment of goods and services by receiving card transactions initiated by a merchant, routing them to the appropriate bank, settling

the transactions, collecting the resulting credits, and forwarding the credits to the merchant's account. (*Id.* at ¶ 13.) Cardholders may charge back a transaction under certain circumstances, such as when goods are not delivered, services are not as represented, or a charge is not authorized. (*Id.* at ¶ 14.) When chargebacks occur, Plaintiff must re-credit the issuing bank and look to the merchant to recover. (*Id.*) Chargeback rights may be exercised up to 180 days after the date of the card transaction. (*Id.*)

Defendant Veteran Toner Services, LLC ("VTS") was in the business of selling toner cartridges and related products. (*Id.* at 16.) VTS had branches in three states—Illinois, New York, and California.[1] Plaintiff alleges that VTS was dominated and controlled by the individual Defendants. (ECF No. 102 at ¶ 9.) BA was owned and operated by Defendant Appelhans.

In November 2013, VTS filed an application with Plaintiff for merchant card processing. (*Id.* at ¶ 22.) Plaintiff's Colorado address was on the application, making it clear that Plaintiff operated in Colorado. Plaintiff alleges the application VTS submitted was misleading in several respects. (*Id.* at ¶ 23.) Nonetheless, after multiple meetings and communications between Plaintiff and VTS, Plaintiff accepted and approved the application, and the parties entered into a merchant agreement. (*Id.*) In December 2013, Plaintiff began processing card transactions for VTS. (*Id.* at ¶¶ 27, 28.) Over the course the parties' two-and-a-half-year business relationship, Plaintiff processed roughly 1500 card transactions for VTS, totaling more than $15 million. (*Id.* at ¶ 30.)

---

[1] Defendant Reich contends these were separate entities. (ECF No. 263-2 at ¶¶ 22-24.)

Per the merchant agreement, personal charges were not permitted. According to the complaint, however, Defendants circumvented this rule and generated cash deposits into the VTS account by presenting personal card transactions accompanied by phony invoice numbers to make the transactions look like product sales. (*Id.* at ¶¶ 32-34.)

In August 2016, VTS announced it had ceased operations, and Plaintiff began receiving chargebacks on some VTS transactions, totaling more than $1.8 million. (*Id.* at ¶ 40.) The VTS account had insufficient funds to cover the chargebacks, and Plaintiff's attempts to recover from VTS were unsuccessful. (*Id.* at ¶ 47.) Plaintiff alleges that the individual Defendants transferred the money from the VTS account to themselves and persons associated with them. (*Id.* at ¶¶ 49-51.)

Plaintiff filed this suit in state court, and the case was removed to this Court. In its second amended complaint, Plaintiff asserts eight claims for relief, seeking to hold Defendants jointly and severally liable for (1) breach of contract; (2) restitution; (3) fraud/deceit; (4) aiding and abetting fraud/deceit; (5) civil theft; (6) aiding and abetting civil theft; (7) violations of the Colorado Organized Crime Control Act ("COCCA"); and (8) civil conspiracy.

## II. DISCUSSION

### A. Motion for Default Judgment

Plaintiff successfully moved for entry of default against VTS after it failed to respond to Plaintiff's complaint.[2] (ECF No. 99.) Plaintiff has now moved for entry of judgment of default against VTS, seeking a judgment of over $6 million. (ECF No. 215.)

---

[2] Default has also been entered against Defendant Grek. (ECF No. 237.)

The decision to enter default judgment is discretionary for this Court. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997). "Once default is entered, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quotation omitted). But "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) (quotation omitted). Thus, the *Hunt* court concluded that in the interest of avoiding inconsistent liability determinations among joint tortfeasors, the district court should not have entered default judgment against one defendant where multiple defendants were alleged to be jointly and severally liable. *Id.* at 148 ("[J]ust as consistent verdict determinations are essential among joint tortfeasors, consistent damage awards on the same claim are essential among joint and several tortfeasors.").

The Court finds that the rationale in *Hunt* applies here and that entry of default judgment against VTS would be inappropriate before liability of the other Defendants is determined. Accordingly, Plaintiff's motion is denied.

**B.     Motion for Partial Judgment on the Pleadings**

Defendants Appelhans and BA have moved for partial judgment on the pleadings on Plaintiff's COCCA claims. (ECF No. 223.)

A motion for judgment on the pleadings is reviewed under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). Accordingly, the Court must assess whether the complaint is legally sufficient to state a

4

claim for which relief may be granted.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under COCCA, a pattern of racketeering activity is defined as "engaging in at least two acts of racketeering activity . . . if at least one of such acts *occurred in this state*."  Colo. Rev. Stat. § 18-17-103(3) (emphasis added).  Relying on this language, Defendants[3] argue that Plaintiff's COCCA claims fail as a matter of law because Plaintiff has not alleged any conduct by any Defendant that occurred in Colorado.

Defendants cite no authority for the proposition that their physical presence in Colorado is required to state a COCCA claim against them, and the Court is not persuaded that the plain language of the provision cited above compels such a conclusion.  COCCA was enacted as part of an effort "to seek the eradication of organized crime in [Colorado] by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."  § 18-17-102.  COCCA expressly provides that its provisions "shall be liberally construed" to achieve these purposes.  § 18-17-108.  The Court finds these purposes would be substantially undermined if those engaged in organized crime could circumvent COCCA simply by doing so from outside the state's borders.

Here, the application for merchant card processing identified Plaintiff as a Colorado business, VTS and its agents had numerous communications with Plaintiff and its agents, who

---

[3] Although this portion of the Court's order addresses the motion filed by Defendants BA and Appelhans, the Court's discussion applies as well to those parts of Defendant Reich's motion that raise the same issue.

were in Colorado, and the underlying transactions were processed in Colorado. The Court concludes this is sufficient to conclude that at least some of Defendants' conduct occurred in Colorado for COCCA purposes. Defendants Appelhans and BA's other arguments overlap significantly with the arguments in Defendant Reich's motion and are therefore addressed in the following section.

### C. Motion for Partial Judgment on the Pleadings and for Summary Judgment as to All Claims Against Defendant David Reich

Defendant Reich filed a Motion for Partial Judgment on the Pleadings and for Summary Judgment as to All Claims Against Defendant David Reich (ECF No. 224), which the Court construes as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.*[4]

    1.    <u>Economic Loss Rule</u>

Defendant Reich first argues that many of Plaintiff's claims are "merely repackaged contractual claims" that are barred by the economic loss rule. (ECF No. 224 at 6.)

Colorado has expressly adopted the economic loss rule, holding that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a

---

[4] In connection with this motion, reported facts are presented in the light most favorable to the non-moving party.

tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) (en banc). The rule was adopted "to maintain the boundary between contract law and tort law." *Id.* at 1259. "Absent an independent duty under tort law, the parties are held to the terms of their bargain." *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008).

Defendant Reich's invocation of the economic loss rule here is inapt. This is not a case where VTS simply breached the terms of the merchant agreement by failing to compensate Plaintiff for chargebacks that happened to occur. Rather, Plaintiff has provided evidence that Defendants purposefully orchestrated an elaborate scheme to obtain cash deposits in the VTS account that Defendants could, and did, access before the transactions were charged back. VTS and its agents made numerous misrepresentations along the way. The scheme began with VTS's application. It continued as Defendants presented transactions having no connection to actual sales of goods or services,[5] made other material misrepresentations about the nature of VTS's business, and created phony invoice numbers to disguise the nature of the transactions being processed by Plaintiff. The scheme ultimately rendered Plaintiff's contractual ability to recover $1.8 million in chargebacks from VTS illusory.

The Court rejects Defendant Reich's premise that third-party cardholders who initiated the chargebacks are entirely to blame for Plaintiff's damages. Plaintiff has adduced evidence that VTS presented transactions it knew were not permitted and the cardholders intended all along to charge back the transactions. But even if presenting the transactions merely amounted to negligent misrepresentation under the terms of the merchant agreement, that would be

---

[5] Defendant Reich has essentially conceded as much, stating that he and others used their credit cards "to lend cash via credit card or otherwise" to VTS. (ECF No. 224-1 at ¶ 59.)

sufficient to violate an independent duty under tort law. "It is well established that in some circumstances a claim of negligent misrepresentation based on principles of tort law, independent of any principle of contract law, may be available to a party to a contract." *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72 (Colo. 1991) (en banc). The Court concludes Plaintiff's tort and statutory claims are premised on duties that arise independently of any duty described in the merchant agreement, and therefore they are not barred by the economic loss rule.

Defendant Reich's argument that he was not a party to the merchant agreement is also unavailing. As discussed more fully below, the Court has already determined that VTS was Defendant Reich's alter ego for the purposes of establishing personal jurisdiction. Although genuine issues of material fact remain as this to whether VTS was his alter ego for the purposes of Plaintiff's claims, if VTS violated its independent duty of care with respect to Plaintiff, Defendant Reich could still be liable on an alter ego theory even if he personally was not a party to the merchant agreement.

    2.  <u>Restitution</u>

Defendant Reich makes a similar argument with respect to Plaintiff's restitution claim, arguing that Plaintiff cannot recover for unjust enrichment because the merchant agreement "unequivocally covers the same subject matter as the allegations on which Plaintiff bases its claims for restitution." (ECF No. 224 at 7.)

Unjust enrichment is a judicially-created remedy intended to prevent one party from unfairly benefitting to the detriment of another party. *Lewis v. Lewis*, 189P.3d 1134, 1141 (Colo. 2008). "[A] party claiming unjust enrichment must prove that (1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the

defendant to retain the benefit without commensurate compensation." *Id.* Since it is an equitable remedy, it does not depend on any contract. *See id.*

As with the preceding argument, Defendant Reich's argument is premised on reading Plaintiff's claims as stemming solely from the merchant agreement and VTS's application. But again, the allegations go beyond alleging that VTS simply did not perform under that agreement. And even if Plaintiff recovers the chargeback amounts, genuine issues of fact remain as to whether its damages exceed what it can recover on its other claims. Under these circumstances, it would be unjust for Defendants to retain the benefits they received through their fraudulent scheme, and summary judgment is not appropriate.

### 3. Fraud and Related Claims

Defendant Reich argues that Plaintiff cannot establish its fraud claim or its related claims for aiding and abetting and conspiracy. Once again, however, Defendant Reich's argument is premised on a narrow reading of the factual basis for Plaintiff's claims. Plaintiff's claims are not based solely on VTS's application for merchant card processing and the $1.8 million of charged back transactions. Rather, its allegations encompass a broad swath of fraudulent conduct that includes fabricating phony invoices and making material misrepresentations about VTS's account and business and the roles of people who ran it. A jury may or may not believe Defendant Reich's counternarrative, which is supported for the most part by his own affidavits, but he falls well short of establishing the lack of a genuine issue for trial with respect to Plaintiff's fraud claims.

### 4. Civil Theft and Related Claims

Defendant Reich's arguments with respect to Plaintiff's civil theft claim and related claims of aiding and abetting and conspiracy are largely duplicative of the arguments this Court

has already rejected. Genuine issues of material fact preclude granting summary judgment on the current record.

### 5. COCCA

Defendant Reich's arguments regarding Plaintiff's COCCA claim add nothing new to the arguments in Defendant BA and Appelhans' motion. For the reasons discussed above, the Court concludes Plaintiff's COCCA claims withstand summary judgment.

### 6. Alter Ego

Finally, Defendant Reich's contention that VTS was not his alter ego is also unavailing. This Court has already determined that VTS was his alter ego for purposes of establishing personal jurisdiction over him. (ECF No. 185 at 21.) That determination and the findings supporting it provide the basis for concluding there are genuine issues of material fact as to whether VTS was Defendant Reich's alter ego—VTS was not operated as a distinct legal entity, funds and assets were commingled, adequate records were not kept, legal formalities were ignored, and funds and assets were used for noncorporate purposes. (*See id.* at 20.) Defendant Reich concedes that he directed another individual to lend money to VTS using his credit card. And Plaintiff has adduced evidence that other individuals acted on behalf of VTS at Defendant Reich's direction, particularly with respect to misrepresentations relevant to processing the underlying card transactions at issue. Accordingly, summary judgment is not warranted.

**D. Motion to Strike**

Plaintiff has filed a motion to strike or disregard portions of the affidavit Defendant Reich submitted in support of his motion. (ECF No. 256.) In light of the Court's denial of that motion, however, the motion to strike is denied as moot.

## III. CONCLUSION

Therefore, the Court ORDERS that

(1) Plaintiff's motion for default judgment (ECF No. 215) is DENIED;

(2) Defendants Appelhans and BA Brokerage's motion for judgment on the pleadings (ECF No. 223) is DENIED;

(3) Defendant Reich's motion for summary judgment (ECF No. 224) is DENIED; and

(4) Plaintiff's motion to strike (ECF No. 256) is DENIED AS MOOT.

DATED this 19th day of March, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge